# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| TIMOTHY TAYLOR, | ) | |
|---|---|---|
| Petitioner, | ) | |
| v. | ) | No. 1:13-cv-1812-JMS-TAB |
| WENDY KNIGHT, | ) | |
| Respondent. | ) | |

## Entry Discussing Petition for Writ of Habeas Corpus and Denying Certificate of Appealability

For the reasons explained in this Entry, the petition of Timothy Taylor for a writ of habeas corpus must be denied and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## The Petition for Writ of Habeas Corpus

### I. Background

District court review of a habeas petition presumes all factual findings of the state court to be correct, absent clear and convincing evidence to the contrary. *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007). Taylor does not challenge the facts set forth in the Indiana Court of Appeals' decision affirming the trial court's denial of Taylor's petition for post-conviction relief. Therefore, the Court adopts the factual summary set out in that decision:

> On May 30, 2007, Sufen Chen, the owner of a massage parlor called "Rejuvenescence," was in the back room of the business when she heard the bell on the front door ring. Chen came to the front room of the business and saw two people leaving in a hurry. One of the people, a very tall, thin black man, re-entered the business and asked for a massage. Chen told the man that he had to make an appointment. The man swung at Chen, pushed her, and pointed at his gun holster, telling Chen to be quiet. Chen saw a black gun in the holster.

The man then pushed Chen and a female employee onto the floor of another room. The man covered Chen and the employee with a towel and walked out of the room before returning with a large man, later identified as Taylor. Taylor watched Chen and the employee while his partner searched the front room.

Taylor's partner, who was never identified, instructed Chen to come to the front room and open the cash register. Taylor and his partner took approximately $600 in cash from the register and the women's wallets.

Taylor told Chen that she would have to give him and his companion $1000 every Friday or "you won't be safe." Taylor then made a hand gesture that Chen interpreted as a sign that he would kill her if she called the police.

After the men left the business, the women did not call the police because of their fear of reprisal from Taylor and his companion. However, when Chen informed her husband, Xiao Yang Gheng, of the threats, he told her to contact the police. The next day, Chen contacted the police department.

The Indianapolis police department informed Chen that she should shut down her business for a few days, as the department did not have sufficient personnel to work the case at that time. However, an officer did come and dust for prints. On June 1, 2007, Chen and Xiao were cleaning the closed store when Chen heard someone push on the locked front door. When Chen looked out, she saw that it was Taylor at the door. Taylor left but returned an hour later. Taylor asked Chen whether she was ready to pay "the one thousand," and Chen responded that she would have the money ready in about an hour. Xiao snuck out the back of the business and identified Taylor's car as a Silver Nissan with Connecticut plates. Xiao also made note of the license number.

Chen called the police and a detective came to the business. While the detective was at the store, Taylor called Chen about the money. Taylor told Chen to bring the money to a Walgreen's store on High School Road in Indianapolis.

Using the description of the car given by Xiao, Indianapolis officers saw Taylor's vehicle in the area, made a stop, and arrested him. Chen subsequently identified Taylor as the man who had been in her store on May 30, 2007. During the identification, Taylor again made the hand sign, indicating that he was pointing a gun at Chen. An officer saw the hand sign and identified it as a "shooting motion."

*Taylor v. State,* 924 N.E.2d 55 at *1-2 (Ind.Ct.App. Feb. 9, 2010)(*Taylor I*). Taylor appealed, raising four issues: 1) whether there was sufficient evidence to support his conviction of intimidation as a Class C felony; 2) whether Chen's testimony was incredibly dubious; 3) whether the trial court erred in granting the State's motion in limine; and 4) whether the trial court abused its discretion in ordering consecutive sentences. The Indiana Court of Appeals affirmed. *Id.*

Taylor then filed an action for post-conviction relief. He claims in this petition that he was denied his right to effective assistance of trial and appellate counsel. The trial court's denial of relief was affirmed on appeal in *Taylor v. State*, No. 49A05-1209-PC-476 (Ind.Ct.App. April 18, 2013)(*Taylor II*).

On appeal from the denial of post-conviction relief, Taylor argued that he was denied the effective assistance of his trial counsel for the following reasons: "(1) for telling the jury in opening statements that Taylor would testify but then not calling him as a witness; 2) for failing to object during the State's closing argument to a statement that could be interpreted as an invitation for the jury to draw an adverse inference from Taylor's silence at trial; and 3) for failing to object during the State's closing argument to a statement that improperly vouched for a State's witness." *Taylor II,* at pp. 5-6. Taylor also contended that he was "denied the effective assistance of appellate counsel when appellate counsel failed to raise a claim regarding prosecutorial misconduct during closing statement." *Taylor II,* at p. 16. These are the claims renewed in his petition for writ of habeas corpus.

## II. Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (1996).

Taylor filed his 28 U.S.C. § 2254 petition after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His petition, therefore, is subject to the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

The Court therefore proceeds to the merits, at least insofar as AEDPA permits. What that means in this case is in order to prevail Taylor must show that the state court in *Taylor II*

unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor,* 529 U.S. 362 (2000); *Morgan v. Krenke,* 232 F.3d 562 (7th Cir. 2000)). Thus, "under AEDPA, federal courts do not independently analyze the petitioner's claims; federal courts are limited to reviewing the relevant state court ruling on the claims." *Rever v. Acevedo,* 590 F.3d 533, 536 (7th Cir. 2010). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted).

The methodology for the Court's analysis is this: The first step under § 2254(d)(1) is "to identify the 'clearly established Federal law, as determined by the Supreme Court of the United States' that governs the habeas petitioner's claims." *Marshall v. Rodgers,* 133 S. Ct. 1446, 1449 (2013) (citing *Williams v. Taylor,* 529 U.S. 362, 412 (2000); *Knowles v. Mirzayance,* 556 U.S. 111, 122 (2009)). The next step in the proper analysis is that the federal habeas court "must determine what arguments or theories supported, or, [in the case of an unexplained denial on the merits], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Harrington v. Richter,* 131 S. Ct. 770, 786 (2011). If a state court's decision "was reasonable, it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011) (per curiam).

### III. Discussion

*Strickland v. Washington,* 466 U.S. 668 (1984), provides the clearly established Federal law, as determined by the Supreme Court of the United States that governs Taylor's claims.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel

> for his defense" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014)(parallel citations omitted).

Because of the deferential AEDPA standard, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable--a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance,* 129 S. Ct. 1411, 1420 (2009) (internal citations and quotations omitted).

The Indiana Court of Appeals recognized the two-prong *Strickland* standard in *Taylor II,* at p. 3. In doing so, it then reasonably applied the general principles of *Strickland* to Taylor's ineffective assistance of counsel claims.

With respect to the first such claim, Taylor contends that his trial counsel rendered constitutionally ineffective assistance. Specifically, Petitioner contends that his trial counsel was ineffective for telling the jury in opening statements that he would testify but then not calling him as a witness, and for failing to object to the State's opening and closing arguments, "which prejudiced [Petitioner]."

The state courts found, however, that that no specific promise was made to the jury that Taylor would testify, that no showing was made as to what Taylor's testimony would have been, and that it was unclear whether it was Taylor or his counsel who made the decision that Taylor would not testify. "That Taylor did not testify despite trial counsel's brief reference to an alternate version of events during his opening statement was not deficient performance by counsel, and

Taylor has not demonstrated that the outcome of his trial would have been different if he had been called to testify." *Taylor II,* at p. 9. Taylor's failure to introduce sufficient evidence to establish that trial counsel's strategy was unreasonable or what his testimony at trial would have been cannot overcome the presumption of effectiveness and demonstrates the reasonableness of the Indiana Court of Appeals' holding. As both the post-conviction court and the Indiana Court of Appeals noted, Taylor failed to introduce evidence at post-conviction hearing pointing to whether it was trial counsel's strategic decision not to put Taylor on the stand or whether it was Taylor's own choice not to testify.

The Indiana Court of Appeals similarly parsed the other specifications of trial counsel's asserted ineffectiveness and in doing so reasonably concluded in each instance that trial counsel's strategy was reasonable and that Taylor had not suffered prejudice in the sense required by *Strickland.*

Taylor's second specification of ineffective assistance of counsel pertains to a claim his attorney in the direct appeal did not argue that the prosecutor had committed misconduct in his closing argument. The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987). An appellate counsel's performance is deficient if he or she fails to argue an issue that is both obvious and clearly stronger than the issues raised. *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003). "The failure of appellate counsel to raise an issue on appeal requires the court to compare the issue not raised in relation to the issues that were raised; if the issue that was not raised is 'both obvious and clearly stronger' than the issues raised, the appellate counsel's failure to raise the neglected issue is objectively deficient." *Sanders v. Cotton*, 398 F.3d 572, 585 (7th Cir. 2005).

Prejudice is established if the issue not raised "may have resulted in a reversal of the conviction or an order for a new trial." *Lee,* 328 F.3d at 901.

The Indiana Court of Appeals reviewed Taylor's ineffective assistance of appellate counsel challenge and explained that because there had been no objection at trial the argument of prosecutor misconduct could only have been raised by arguing that it constituted fundamental error—a showing which could not be made. Additionally, if a claim of ineffective assistance of counsel at trial had been asserted on direct appeal Taylor would have been foreclosed from asserting additional ineffective assistance of counsel claims in the post-conviction relief proceeding. *Taylor II,* at pp. 17-18. Counsel's strategy in not sacrificing such additional claims was reasonable.

The Indiana Court of Appeals "took the constitutional standard seriously and produced an answer within the range of defensible positions." *Mendiola v. Schomig,* 224 F.3d 589, 591 (7th Cir. 2000). The Indiana Court of Appeals' *Strickland* decision was not "an unreasonable application of clearly established Federal law." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003) (per curiam). Accordingly, this decision is entitled to AEDPA deference under § 2254(d)(1), *id.,* and Taylor is therefore not entitled to habeas corpus relief based on his claim that he was denied the effective assistance of counsel either at trial or in his direct appeal.

## IV. Conclusion

The standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted); *see also Cavazos v. Smith,* 132 S. Ct. 2, 7–8 (2011) (per curiam) (citing Supreme Court jurisprudence "highlighting the necessity of deference to state courts in § 2254(d) habeas cases"). Taylor's habeas petition fails to satisfy this difficult standard and that petition is therefore **denied.**

Judgment consistent with this Entry shall now issue.

## Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the court finds that Taylor has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" or "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The court therefore denies a certificate of appeal.

IT IS SO ORDERED.

Date: 03/02/2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Timothy Taylor 149177
Intake Center
P.O. Box 8249
Cranston, RI 02920

Electronically Registered Counsel